J-S38020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| IDRIS MUNSON, | |
| Appellant | No. 3160 EDA 2016 |

Appeal from the Judgment of Sentence June 21, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1301659-2006

BEFORE:  GANTMAN, P.J., SHOGAN and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 25, 2017**

Appellant, Idris Munson, appeals from the judgment of sentence entered following the revocation of his probation.  We affirm the judgment of sentence, but remand for a correction of a clerical error on the docket.

The trial court set forth the history of this case as follows:

On February 9, 2007, the Appellant plead guilty[1] to one count of possession with intent to deliver marijuana and was sentenced to eleven and a half months to twenty-three months of incarceration plus two years of probation.  While serving probation, the Appellant was arrested for Luring a Child into a Motor Vehicle.  According to the court docket, the Appellant's violation of probation hearing was originally scheduled for May 21, 2010.  On January [11], 2011, the Appellant plead[2] nolo contendere to Luring a Child into a Motor Vehicle and two counts of Corruption of Minors charges.  The Appellant was sentenced to one to five years of incarceration on the Luring a Child charge

_____

[*]  Former Justice specially assigned to the Superior Court.

and five years of probation on the Corruption of Minors charges to run consecutively to his incarceration for possession with intent to deliver marijuana. The docket subsequently reflects that the violation of probation hearing was continued due to administrative reasons including a snow emergency closure, failure to bring down the Appellant to the courtroom and coordinating a video conference hearing. On June 21, 2012, the Honorable Joan A. Brown revoked the Appellant's probation and resentenced the Appellant to two to four years of incarceration consecutively to the sentence the Appellant received on the Luring a Child charge. N.T. 6/21/12 at p. 7, 11[,] 11-18.

[1] The Appellant plead guilty before the Honorable Gregory E. Smith.

[2] The Appellant plead nolo contendere for his new offense before The Honorable William J. Mazzola.

On July 2, 2012 the Appellant filed a Petition to Reconsider Sentence. Upon review of the Clerk of Quarter Sessions File, the court did not respond. On March 5, 2013, the Appellant filed a Petition for Post-Conviction Relief.[3] Subsequently, counsel agreed to reinstate Appellant's direct appellate rights *nunc pro tunc*. Pursuant to the mutual agreement of counsel, this Court issued an Order on September 16, 2016 granting Appellant's right to file a *nunc pro tunc* appeal within thirty days. [Appellant] filed a timely appeal after which this Court issued an Order pursuant to Pa.R.A.P. 1925(b).

[3] The PCRA Petition was administratively reassigned to The Honorable Scott DiClaudio due to the retirement of The Honorable Joan A. Brown who heard [Appellant's] violation of probation hearing on June 21, 2012.

Trial Court Opinion, 1/12/17, at 1-2. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

Should [Appellant's] sentence be vacated because he was not afforded a speedy probation revocation hearing, as required by Pa.R.Crim.P. 708, and because the 580-day delay between

his probation violation and revocation hearing prejudiced him by increasing the duration of his incarceration?

Appellant's Brief at 2.

Appellant contends that the trial court violated Pa.R.Crim.P. 708 by failing to hold a revocation hearing as speedily as possible. Appellant's Brief at 7-12. Appellant contends that, because of the delay, his sentence should be vacated.

In an appeal from a sentence imposed after the court has revoked probation, we can review "the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." **Commonwealth v. Wright**, 116 A.3d 133, 136 (Pa. Super. 2015). In **Commonwealth v. Woods**, 965 A.2d 1225 (Pa. Super. 2009), we set forth the following standard when considering the merits of a challenge to a less-than-speedy probation violation hearing:

Pa.R.Crim.P. 708 provides, in relevant part, that:

> **Rule 708. Violation of Probation, Intermediate Punishment, or Parole: Hearing and Disposition**
>
> * * *
>
> **(B)** Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

(1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and

(2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708(B)(1), (2).

The language "speedily as possible" has been interpreted to require a hearing within a reasonable time. Rule 708 does not establish a presumptive period in which the Commonwealth must revoke probation; but instead, the question is whether the delay was reasonable under the circumstances of the specific case and whether the appellant was prejudiced by the delay. The relevant period of delay is calculated from the date of conviction or entry of guilty plea to the date of the violation hearing.

In evaluating the reasonableness of a delay, the court examines three factors: [1] the length of the delay; [2] the reasons for the delay; and [3] the prejudice resulting to the defendant from the delay. The court must analyze the circumstances surrounding the delay to determine if the Commonwealth acted with diligence in scheduling the revocation hearing. Prejudice in this context compromises the loss of essential witnesses or evidence, the absence of which would obfuscate the determination of whether probation was violated, or unnecessary restraint of personal liberty.

*Commonwealth v. Clark*, 847 A.2d 122, 123-124 (Pa. Super. 2004) (citations omitted).

*Woods*, 965 A.2d at 1227-1228.

We first consider the length of the delay. Our review of the record reflects that on January 11, 2011, after having pled *nolo contendere* to

luring a child into a motor vehicle and related crimes, Appellant was sentenced to an aggregate term of incarceration of one to five years, followed by five years of probation. On June 21, 2012, the trial court ultimately conducted a revocation hearing in the instant matter and found Appellant to be in violation of his probation. Hence, the delay involved a period of approximately one year and five months. We recognize that we have held delays of shorter duration to be reasonable. *See Commonwealth v. Pelzer*, 466 A.2d 159 (Pa. Super. 1993) (holding that a ten-month delay was reasonable and not violative of former Rule 1409); *Commonwealth v. Woods*, 965 A.2d 1225 (Pa. Super. 2009) (holding that a delay of approximately nine months was not violation of probationer's right to speedy violation of probation hearing). We have also held protracted delays to be unreasonable. *See Commonwealth v. McCain*, 467 A.2d 382 (Pa. Super. 1983) (concluding that a twelve-month delay cannot be dismissed as "intrinsically reasonable"). Although we conclude that the length of the delay in holding Appellant's probation-violation hearing was not intrinsically reasonable, the length of the delay is not the sole factor we must review.

Therefore, "we must [next] examine the reasons for the delay to determine whether the Commonwealth acted with due diligence in scheduling the revocation hearing." *Woods*, 965 A.2d at 1228. Specifically, the second factor in the reasonableness analysis requires scrutiny of the

reasons for the delay and the surrounding circumstances to evaluate whether the Commonwealth was diligent in scheduling the hearing. ***Commonwealth v. Mines***, 797 A.2d 963, 965 (Pa. Super. 2002).

In discussing the delay at issue, the trial court stated the following:

> In evaluating the reasons for the time delay, it is apparent that the continuances were purely administrative in nature, composing chiefly of scheduling and videoconferencing issues. Moreover, according to the docket, the Commonwealth did not initiate the continuances and therefore the delay was not attributable to the Commonwealth. Therefore, none of the continuances "represent[ed] a deliberate attempt by the Commonwealth to hamper ... or prejudice" the defense. ***Commonwealth v. Dickens***, 475 A.2d 141, 143 (Pa. Super. Ct. 1984). Furthermore, the docket reflects that Appellant's violation of probation hearing was originally scheduled less than one month after his new arrest.

Trial Court Opinion, 1/12/17, at 4.

Appellant has offered no reason to overturn the trial court's conclusion that the delay was not attributable to the Commonwealth. Indeed, our review of the certified record supports the determination of the trial court that the delays were not attributable to the Commonwealth. Furthermore, the record reflects multiple docket entries contain explanations for the revocation hearing being continued, such as: "hearing continued judge not sitting;" "hearing continued defendant not brought down;" "snow emergency courts closed;" "violation of probation hearing continued for video date; date not yet given;" and "violation of probation hearing continued technical issues with video hearing; defendant to be brought down. writ to be prepared."

Hence, any allegation that the Commonwealth was not diligent in scheduling a revocation hearing lacks merit.

Nevertheless, even if we were to conclude that the reasons for the delay in this case appeared to be lacking, we must examine the final factor. "[W]here the Commonwealth provides no explanation for the delay, the court should not attribute the delay to the defendant; instead, the court should analyze whether the delay prejudiced the defendant." ***Commonwealth v. Christmas***, 995 A.2d 1259, 1263 (Pa. Super. 2010) (citation omitted). "To demonstrate a violation of his right to a speedy probation revocation hearing, a defendant must allege and prove the delay in holding the revocation hearing prejudiced him." ***Id***.

The meaning of prejudice in the context of providing a prompt revocation hearing "has been interpreted as being something, which could detract from the probative value and reliability of the facts considered, vitiating the reliability of the outcome itself." ***Commonwealth v. Marchesano***, 544 A.2d 1333, 1336 (Pa. 1988). "Prejudice in this context compromises the loss of essential witnesses or evidence, the absence of which would obfuscate the determination of whether probation was violated, or unnecessary restraint of personal liberty." ***Woods***, 965 A.2d at 1227-1228 (citation omitted).

"[W]here a conviction on new charges conclusively establishes the defendant's probation violation, the defendant cannot claim a delay in his

[probation-revocation] hearing prejudiced him because he lost favorable witnesses and evidence." *Christmas*, 995 A.2d at 1263-1264. Moreover, if a defendant is already incarcerated on the charges that triggered the probation revocation, he cannot claim the delay in holding his revocation hearing caused him any loss of personal liberty. *Id*. at 1263.

Here, Appellant concedes that he did not suffer prejudice from the delay related to his ability to defend against whether probation was violated. Appellant's Brief at 12 n.2. Indeed, it is undisputed that Appellant's probation revocation was based entirely upon new criminal charges and convictions. Thus, Appellant has not established prejudice in this regard.

However, Appellant contends that the delay subjected him to an unnecessary restraint of personal liberty. Appellant's Brief at 11-12. Appellant baldly alleges that the delay increased the amount of time he would have to serve in prison. *Id*. at 11.

Our review of the record reflects that, at the time of the revocation hearing, Appellant was serving a term of incarceration of one to five years for the charges that directly resulted in the violation of his probation. N.T., 6/21/12, at 7. Upon the revocation of his probation, the court sentenced Appellant to serve a term of incarceration of two to four years to run consecutively to the sentence imposed at CP-51-CR-0007379-2010, which involved the charges that led to the revocation of his probation. Hence, Appellant was not unnecessarily deprived of personal liberty by the delay

because he was not incarcerated for additional time. ***Christmas***, 995 A.2d at 1263. ***See also Clark***, 847 A.2d at 125 (no prejudice as defendant was not incarcerated for additional time). Accordingly, we conclude that Appellant's claim of prejudice lacks merit and find that he is not entitled to relief based upon a claimed violation of his right to a speedy revocation hearing.

As an additional matter, we observe that Appellant incorrectly indicates that the sentence imposed upon revocation of his probation was to run "concurrent" to the sentence he was serving on the subsequent charges at CP-51-CR-0007379-2010. Appellant's Brief at 1, 5 and 11. However, our careful review of the certified record reflects that, at the time of sentencing following the revocation of probation, the court specified that Appellant's sentence was to be served "consecutive" to the sentence that he was currently serving. N.T., 6/21/12, at 7. Likewise, the written sentencing order also specifies that the revocation sentence was to be served "consecutive" to the sentence Appellant was serving at CP-51-CR-0007379-2010. Nevertheless, the trial court's corresponding docket entry erroneously indicates that the sentence of two to four years is to run concurrent to the sentence at CP-51-CR-0007379-2010.

As we have expressed, the written sentencing order controls any sentencing dispute. ***See Commonwealth v. Willis***, 68 A.3d 997, 1010 (Pa. Super. 2013) (reiterating the rule that written sentence generally controls

where discrepancy exists between sentence as written and sentence as orally pronounced).  We must conclude that the erroneous docket entry was due to a clerical error.  In addition, we are mindful of the long standing proposition that "[c]lerical errors or inaccuracies in docket entries may be corrected by the trial court so that they conform to the facts." *Commonwealth v. Mount*, 93 A.2d 887, 888 (Pa. Super. 1953). Accordingly, we remand for the trial court to exercise its authority and correct the clerical error on the docket so that the docket entry comports with the sentencing order.

Judgment of sentence affirmed.  Case remanded for correction of a clerical error on the docket.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2017

- 10 -